**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MICHAEL ROY PARKINSON,<br><br>                    Plaintiff,<br><br>    v.<br><br>STEVEN SANDERSON; ALEX JACOB HUGGARD; and TRENT BLAINE PEARSON,<br><br>                    Defendants. | **REPORT AND RECOMMENDATION TO GRANT MOTION FOR SUMMARY JUDGMENT (ECF NO. 75)**<br><br>Case No. 2:15-cv-00796-JNP-EJF<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

The remaining Defendant in this case, Officer Steven Sanderson, moves for summary judgment on the sole remaining Fourth Amendment claim that Plaintiff Michael Roy Parkinson asserts against him in this 42 U.S.C. § 1983 action.  (Mot. for Summ. J. ("Mot."), ECF No. 75.)  Mr. Parkinson maintains a Fourth Amendment claim against Officer Sanderson for an allegedly unlawful traffic stop.  (Mem. Decision & Order Granting in Part & Denying in Part Defs.' Mot. to Dismiss ("Mot. to Dismiss Order") 18, ECF No. 66.)  At the motion to dismiss stage, the District Judge noted that Mr. Parkinson's remaining claim against Officer Sanderson "appears potentially vulnerable to a lurking collateral estoppel issue."  (Id. at 14 n.3 (citing Allen v. McCurry, 449 U.S. 90 (1980).)  The District Judge explained that "[i]f Mr. Parkinson had an opportunity to fully and fairly litigate the issue of Officer Sanderson's reasonable suspicion before the state trial court, he may well be estopped from relitigating the same before this court."  (Id.)

1

In the present Motion for Summary Judgment, Officer Sanderson argues that issue preclusion (a term interchangeable with collateral estoppel[1]) bars Mr. Parkinson from relitigating whether Officer Sanderson had reasonable suspicion to conduct the traffic stop.  Officer Sanderson contends the judge in Mr. Parkinson's state court case found he and Officers Alex Jacob Huggard and Blaine Pearson (collectively, "the Officers") had probable cause—a more demanding standard than reasonable suspicion—to execute the traffic stop.  Accordingly, Officer Sanderson argues the Court should grant summary judgment on Mr. Parkinson's remaining Fourth Amendment claim because it hinges on whether reasonable suspicion existed for the traffic stop.  Mr. Parkinson, however, disputes that the state court's determination—finding the traffic stop lawful—satisfies all the requirements necessary to invoke issue preclusion under Utah law.  (See Opp'n to Mot. for Summ. J. ("Opp'n"), ECF No. 77.)  Primarily, Mr. Parkinson contends that because his criminal conviction did not depend on the legality of the stop, the court did not need to decide the legality of the stop in that case, and therefore, the decision does not preclude him from having the matter decided in this civil case.  (Id. at 1-2.)

Having considered the parties' briefing and arguments of counsel at the hearing (ECF No. 84), the undersigned[2] recommends the District Judge find issue preclusion bars Mr. Parkinson from relitigating the issue of whether reasonable suspicion existed for the traffic stop.  Mr. Parkinson filed two motions to suppress in his state court case

---

[1] "The terms 'collateral estoppel' and 'issue preclusion' are used interchangeably." Murdock v. Ute Indian Tribe, 975 F.2d 683, 686 n.4 (10th Cir. 1992).

[2] On October 2, 2018, District Judge Jill N. Parrish referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 67.)

arguing that the court should suppress all evidence obtained subsequent to the traffic stop.  In those motions, Mr. Parkinson claimed the Officers lacked the reasonable suspicion necessary to conduct the traffic stop.  In connection with the first motion to suppress, the judge in Mr. Parkinson's state court case held an evidentiary suppression hearing during which the Officers testified—and Mr. Parkinson declined to testify—and also heard argument on the motion, including from Mr. Parkinson, at a later hearing. After receiving the parties' briefing and arguments and the Officers' testimony at the suppression hearing, the judge concluded that the Officers had probable cause to initiate the traffic stop.  The judge reiterated this conclusion in connection with his ruling on a second motion to suppress filed by Mr. Parkinson.

As set forth in more detail below, the undersigned finds the four elements required to invoke issue preclusion under Utah law satisfied.  Thus issue preclusion bars Mr. Parkinson from relitigating the existence of reasonable suspicion for the traffic stop.  If issue preclusion applies, then Mr. Parkinson's remaining Fourth Amendment claim against Officer Sanderson fails.  Accordingly, the undersigned RECOMMENDS the District Judge GRANT Officer Sanderson's Motion for Summary Judgment.

## LEGAL STANDARD

The Court grants summary judgment when the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  " 'A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented.' "  Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting

3

E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000)

(internal quotations omitted)).  In evaluating a motion for summary judgment, the Court

reviews "the facts in the light most favorable to the nonmovant and draw[s] all

reasonable inferences in the nonmovant's favor." Jones v. Norton, 809 F.3d 564, 573

(10th Cir. 2015).

      As noted, Mr. Parkinson maintains a § 1983 cause of action for violation of his

Fourth Amendment rights arising from a traffic stop he contends occurred without

reasonable suspicion.  The District Judge has already set forth the legal basis for a

claim of unconstitutional seizure in the form of a traffic stop without an objectively

reasonable suspicion as follows:

> A traffic stop amounts to an unreasonable seizure if the officer conducting
> the stop lacks a "reasonable suspicion" that criminal activity is afoot. See
> United States v. Cortez-Galaviz, 495 F.3d 1203, 1205–06 (10th Cir. 2007).
> "To satisfy the reasonable suspicion standard, an officer must have a
> 'particularized and objective' basis for thinking the detained individual is
> involved in criminal activity." Id. at 1206 (quoting United States v. Cortez,
> 449 U.S. 411, 417 (1981)).  Courts "evaluate the reasonableness of
> searches and seizures based on the facts known to officers when the event
> in question occurred[.]" United States v. Harris, 735 F.3d 1187, 1191 (10th
> Cir. 2013).

(Mot. to Dismiss Order 13, ECF No. 66.)  Thus to prevail on his claim, Mr. Parkinson

must prove Officer Sanderson lacked reasonable suspicion.  Officer Sanderson

contends the district court in the criminal case already decided the issue, and Mr.

Parkinson may not relitigate it.

      "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give

the same preclusive effect to a state-court judgment that the judgment would be given in

the courts of the state in which the judgment was rendered." Jiron v. City of Lakewood,

392 F.3d 410, 415–16 (10th Cir. 2004).  As to § 1983 cases specifically, the Supreme

Court held in <u>Allen v. McCurry</u> that issue preclusion bars relitigation in a § 1983 civil action of any issue previously determined in a state court criminal case so long as the plaintiff had a "full and fair opportunity" to litigate the issue in the state court proceeding. 449 U.S. 90, 103–05 (1980); <u>see also</u> <u>Cook v. Aagard</u>, 547 F. App'x 857, 859 (10th Cir. 2013) (unpublished) ("A federal civil rights plaintiff may be collaterally estopped from litigating a § 1983 claim by a state court criminal judgment, so long as he had a full and fair opportunity to litigate the issue at the state criminal proceedings.").

"Under 28 U.S.C. § 1738, the preclusive effect of a state judgment is governed by the rules of preclusion of that state." <u>Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.</u>, 497 F.3d 1096, 1100 (10th Cir. 2007). Under Utah law, "[i]ssue preclusion . . . 'prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit' " if the case meets the following elements:

> "(i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits."

<u>Oman v. Davis Sch. Dist.</u>, 2008 UT 70, ¶¶ 28, 29 (quoting <u>Buckner v. Kennard</u>, 2004 UT 78, ¶ 12, 99 P.3d 842 & <u>Collins v. Sandy City Bd. of Adjustment</u>, 2002 UT 77, ¶ 12, 52 P.3d 1267). The Utah Supreme Court has stated that " '[t]he <u>minimum</u> reach of issue preclusion beyond precise repetition of the first action is to prevent relitigation by mere introduction of cumulative evidence bearing on a simple historical fact that has once been decided.' " <u>Harline v. Barker</u>, 912 P.2d 433, 443 (Utah 1996) (emphasis in original) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Fed. Prac.</u>

& Proc. § 4417, at 157 (1981)).  The parties agree that Mr. Parkinson—the party against whom Officer Sanderson asserts issue preclusion in this case—was a party in his state court criminal case, State v. Parkinson, No. 151902837 (Utah 3d Jud. Dist. Ct.).  (Mot. 16, ECF No. 75; see Opp'n, ECF No. 77.)  The parties also agree that the issue previously decided is identical to the remaining issue in this case.  (Mot. 16-17, ECF No. 75; Opp'n 1, ECF No. 77 (stating that "the validity of [Mr.] Parkinson's traffic stop—the only issue remaining in this case—was . . . litigated in [Mr.] Parkinson's criminal case.").)  Thus, the undersigned addresses only the final two elements of issue preclusion.

## RELEVANT FACTS

The following facts come from Officer Sanderson's Motion for Summary Judgment and the filings in this case.  Mr. Parkinson does not dispute any of the facts set forth by Officer Sanderson.  (Opp'n 2, ECF No. 77.)  However, Mr. Parkinson claims that the facts set forth by Officer Sanderson "are both over- and under-inclusive of what is necessary to resolve this Motion."  (Id.)  In particular, Mr. Parkinson points out that in connection with the second motion to suppress he filed in state court the judge made alternative findings—finding the traffic stop valid and that even if illegal, Mr. Parkinson could not use the Fourth Amendment to suppress evidence of his intervening criminal conduct occurring after the stop.  (Id.)  The facts below set forth both aspects of the judge's ruling on the second motion to suppress.

On February 26, 2015, Murray City Officers Steven Sanderson, Alex Jacob Huggard, and Trent Blaine Pearson stopped Mr. Parkinson in his vehicle.  (Ex. B to Mot., Sanderson Test. Tr., 3:35-4:5, ECF No. 75-2; Ex. C to Mot., Huggard & Pearson

Test. Tr. 6:16-8:27, 49:27-52:26, ECF No. 75-2.)  The State charged Mr. Parkinson with two counts of assaulting a police officer, one count of failing to stop at a police command, possession of a controlled substance with intent to distribute, and possession of drug paraphernalia.  (Ex. N to Mot., 3/23/16 Minute Entry 1, ECF No. 75-2.)  The state court dismissed the last two claims, and a jury found Mr. Parkinson guilty of two counts of assaulting a police officer and one count of failing to stop at a police command.  (Ex. N to Mot., 3/23/16 Minute Entry 2, ECF No. 75-2; Mot., Fact ¶ 19, ECF No. 75.)  Prior to his trial, on September 14, 2015, Mr. Parkinson filed a pro se motion to suppress dated August 5, 2015 in his Utah state court criminal case, State v. Parkinson, No. 151902837 (Utah 3d Jud. Dist. Ct.).  (Mot., Fact ¶ 6, ECF No. 75; Ex. A to Mot., 8/5/15 Mot. to Suppress, ECF No. 75-1.)  The motion indicates Mr. Parkinson submitted the motion to suppress with his attorneys' approval.  (Ex. A to Mot., 8/5/15 Mot. to Suppress 12, ECF No. 75-1.)  Among other things, Mr. Parkinson argued that " '[t]he Detectives violated [his] rights of protection under the 4th Amendment' and that '[t]he Detectives [had] no reasonable suspicion to have pulled [him] over for a traffic violation that did not happen.' "  (Mot., Fact ¶ 6, ECF No. 75 (quoting Ex. A to Mot., 8/5/15 Mot. to Suppress 9, ECF No. 75-1).)  Based on this alleged constitutional violation and others, Mr. Parkinson sought to suppress evidence obtained after the stop.  (Ex. A to Mot., 8/5/15 Mot. to Suppress 1–2, 9–12, ECF No. 75-1.)  Mr. Parkinson submitted two affidavits in support of his motion.  (See Ex. A to 8/5/15 Mot. to Suppress (attached Affidavits), ECF No. 75-1.)

On September 16, 2015, the state court held an evidentiary suppression hearing during which the Officers all testified under oath.  (Mot., Fact ¶ 7, ECF No. 75; Ex. B to

Mot., Sanderson Test. Tr., ECF No. 75-2; Ex. C to Mot., Huggard & Pearson Test. Tr.,
ECF No. 75-2.)  As to the traffic stop, "Officer Sanderson testified that on February 26,
2015, he pulled Mr. Parkinson over after he 'saw [Mr. Parkinson's] vehicle . . . perform .
. . a traffic violation,' specifically 'a failure to signal properly before a lane change.' "
(Mot., Fact ¶ 7a, ECF No. 75 (quoting Ex. B to Mot., Sanderson Test. Tr. 3:35–4:5, ECF
No. 75-2).)  "Officer Pearson testified that on February 26, 2015, he saw Mr. Parkinson
change lanes and pull behind another vehicle, 'follow[] that vehicle too closely,' then
make another lane change 'without using an appropriate signal, meaning that he didn't
use a signal for at least 2 seconds prior to making the lane change.' "  (Mot., Fact ¶ 7b,
ECF No. 75 (quoting Ex. C to Mot., Pearson Test. Tr. 6:16–7:19, ECF No. 75-2).)
Officer Huggard arrived at the scene after Officers Sanderson and Pearson pulled over
Mr. Parkinson's vehicle.  (See Ex. C to Mot., Huggard Test. Tr. 45:10–37, ECF No. 75-
2.)  One of Mr. Parkinson's attorneys, M.E. Larson from Utah Legal Defenders, cross-
examined each Officer.  (Ex. B to Mot., Sanderson Test. Tr. 21:2–28:1, ECF No. 75-2;
Ex. C to Mot., Pearson Test. Tr. 29:34–37:40, ECF No. 75-2; Ex. C to Mot., Huggard
Test. Tr. 68:20–77:29, ECF No. 75-2.)  Mr. Parkinson "chose not to testify at the
suppression hearing[.]"  (Ex. E to Mot., 9/30/15 Hr'g Tr. 15:13–17, ECF No. 75-2.)

After the suppression hearing, on September 25, 2015, Mr. Parkinson filed a pro
se brief responding to the hearing testimony.  (Mot., Fact ¶ 8, ECF No. 75; Ex. D to
Mot., Mem. in Resp. to Prosecution & Test. by Witnesses, ECF No. 75-2.)  In that brief,
"[Mr.] Parkinson argued, among other things, that 'the Officers/Detectives are unable to
produce the factual detail required to meet the standard of reasonable suspicion,' and
that, in their testimony at the evidentiary hearing, the Murray City officers 'affirmed that

[Mr.] Parkinson did in fact use his turn signal in all three (3) lanes, and also into and through the left hand turning lane[,] [t]hus voiding the traffic citation and creating conflicting statements before the Court that contradict the truthfulness and reasonableness of the stop.' " (Mot., Fact ¶ 8, ECF No. 75 (quoting Ex. D to Mot., Mem. in Resp. to Prosecution & Test. by Witnesses 2–3, ECF No. 75-2).)

On September 30, 2015, the state court held a hearing on Mr. Parkinson's motion to suppress. (Mot., Fact ¶ 9, ECF No. 75; Ex. E to Mot., 9/30/15 Hr'g Tr., ECF No. 75-2.) At the hearing, the State argued that the observed traffic violation described by the Officers provided "grounds for a traffic stop." (Ex. E to Mot., 9/30/15 Hr'g Tr. 24:8–13, ECF No. 75-2; Mot., Fact ¶ 9, ECF No. 75.) The judge heard Mr. Parkinson's argument on the motion to suppress and asked him specifically to respond on the issue of "probable cause to . . . make the traffic stop." (Ex. E to Mot., 9/30/15 Hr'g Tr. 8:22–15:24, 25:18–27:13, ECF No. 75-2.) Mr. Parkinson replied: "I used my turn signal. I know I did. Their testimony says I did[,]" and "I know I used my turn signal." (Ex. E to Mot., 9/30/15 Hr'g Tr. 25:21–22, 27:9–10, ECF No. 75-2; Mot., Fact ¶ 9, ECF No. 75.) After hearing the parties' arguments, the judge made the following ruling:

> As to the issue . . . of traffic violations that were a basis for the stop, I find there was credible testimony that I received at the preliminary hearing that the defendant had engaged in traffic violations of following too closely and failing to use a turn signal. I recognize, in reading through the preliminary hearing transcript, there were some slight differences about exactly when the violation occurred, but I conclude that there is credible evidence that Mr. Parkinson, at least on one occasion, changed lanes without signaling, as observed by the officer, and at least on one occasion, observed by the officer, was following too closely. That formed the basis for the traffic stop,

and I find there is probable—was probable cause for the stop to occur based
on credible testimony that I heard at the suppression hearing.

(Mot., Fact ¶ 10, ECF No. 75 (quoting Ex. E to Mot., 9/30/15 Hr'g Tr. 28:23–29:14, ECF

No. 75-2).)

After the judge issued this ruling and others denying Mr. Parkinson's pending

motions, Mr. Parkinson informed the judge that he wanted to seek an interlocutory

appeal of the rulings.  (Ex. E to Mot., 9/30/15 Hr'g Tr. 125:1–128:20, ECF No. 75-2.)

Mr. Parkinson's counsel even made a motion to stay the case pending resolution of the

interlocutory appeal.  (Id. at 132:18–24.)  However, Mr. Parkinson ultimately decided he

did not want to stay the case to seek an interlocutory appeal.  (Id. at 140:18–147:9.)

After Mr. Parkinson indicated he did not want to stay the case, the judge told him "[t]o

be clear, if you want to have a stay and do an interlocutory appeal, you have a right to

do that . . .," and he "totally respect[s] [Mr. Parkinson's] right to appeal it, to have the

appellate court look at everything, all of the evidence and information . . . ."  (Id. at

144:14–16, 146:18–20.)  Nevertheless, Mr. Parkinson informed the judge that he did not

want to stay the proceedings and elected to proceed to trial.  (Id. at 146:23–147:9.)

After this hearing, Mr. Parkinson filed a motion for recusal seeking " 'an order

assigning [his] case away from . . . the judge currently assigned to [the] case.' "  (Mot.,

Fact ¶ 11, ECF No. 75 (quoting Ex. F to Mot., 10/27/15 Minute Entry 1, ECF 75-2).)

"In reviewing that motion, the state court's Associate Presiding Judge observed that Mr.

Parkinson 'filed four motions, all of which were denied' on September 30[, 2015]."

(Mot., Fact ¶ 11, ECF No. 75 (quoting Ex. F to Mot., 10/27/15 Minute Entry 3, ECF No.

75-2).)  The Associate Presiding Judge specifically referred to Mr. Parkinson's "Motion

to Suppress evidence, whereunder [Mr. Parkinson] had asked the Court to find that

there was no probable cause for the underlying traffic stop" and noted that the judge found probable cause existed for the traffic stop.  (Ex. F to Mot., 10/27/15 Minute Entry 1–2, ECF No. 75-2; Mot., Fact ¶ 11, ECF No. 75.)  "In denying Mr. Parkinson's Motion for Recusal, the Associate Presiding Judge noted that the judge had 'spent nearly the entire day hearing [Mr. Parkinson's] four motions, which is unusual in the context of a busy criminal docket.' "  (Mot., Fact ¶ 11, ECF No. 75 (quoting Ex. F to Mot., 10/27/15 Minute Entry 3, ECF No. 75-2).)  He further observed that "[b]y all appearances, [the judge] took [Mr. Parkinson's] motions very seriously, and gave [Mr. Parkinson] a full opportunity to argue his positions and be heard on the matters pending before the Court."  (Mot., Fact ¶ 11, ECF No. 75; Ex. F to Mot., 10/27/15 Minute Entry 3, ECF No. 75-2.)  The Associate Presiding Judge concluded that Mr. Parkinson "is free to appeal [the] rulings to an appellate court if he believes that they are incorrect" but "is not entitled to a new judge simply because of unhappiness with certain substantive rulings handed down by the assigned judge."  (Ex. F to Mot., 10/27/15 Minute Entry 3–4, ECF No. 75-2.)

On February 3, 2016, Mr. Parkinson, through counsel, filed a second motion to suppress relating to the traffic stop.  (Mot., Fact ¶ 14, ECF No. 75; Ex. I, 2/3/16 Mot. to Suppress All Evidence, Actions & Test. Due to the Illegality of the Traffic Stop ("2/3/16 Mot. to Suppress"), ECF No. 75-2.)  Mr. Parkinson argued that "[t]hrough police reports and prior testimony, the officers have not presented enough evidence that they had reasonable suspicion to legally search and seize Mr. Parkinson[,]" and therefore "all evidence, actions, and testimony that was obtained and/or occurred during the unlawful

11

stop should be suppressed[.]"  (Ex. I, 2/3/16 Mot. to Suppress 4, 9, ECF No. 75-2; Mot., Fact ¶ 14, ECF No. 75.)

On February 18, 2016, the State opposed Mr. Parkinson's motion to suppress. (Mot., Fact ¶ 15, ECF No. 75; Ex. J to Mot., State's Mem. in Opp'n to Def.'s Mot. to Suppress All Evidence, Actions & Test. Due to the Illegality of the Traffic Stop ("Opp'n to 2/3/16 Mot. to Suppress"), ECF No. 75-2.)  Among its arguments, the State pointed out that during the September 30, 2015 hearing, the state court "made a factual finding that there was probable cause for the traffic stop" and that "[t]he stop was, therefore, lawful at its inception."  (Ex. J to Mot., Opp'n to 2/3/16 Mot. to Suppress 4–5, ECF No. 75-2; Mot., Fact ¶ 15, ECF No. 75.)

At the February 22, 2016 hearing on the motion to suppress, the judge asked the parties to provide "supplemental briefing in regard to the question of whether a Fourth Amendment violation by [a] police offer would suppress the subsequent conduct alleged in [Mr. Parkinson's] case and for which [Mr. Parkinson] is charged."  (Ex. L to Mot., State's Mem. in Opp'n to Def.'s Suppl. Mot. to Suppress All Evidence, Actions, & Test. Due to the Illegality of the Traffic Stop ("Suppl. Opp'n to 2/3/16 Mot. to Suppress") 2, ECF No. 75-2; see also Ex. K to Mot., Suppl. Mot. to Suppress All Evidence, Actions, & Test. Due to the Illegality of the Traffic Stop ("Suppl. 2/3/16 Mot. to Suppress") 1, ECF No. 75-2.)  In his supplemental motion to suppress, Mr. Parkinson argued "that because '[t]he officers unlawfully stop[ped] [Mr. Parkinson's] vehicle with the intent to search,' " the court should exclude evidence of Mr. Parkinson's assault of the Officers, as it is " 'considered fruit of the poisonous tree.' "  (Mot., Fact ¶ 16, ECF No. 75 (quoting Ex. K to Mot., Suppl. 2/3/16 Mot. to Suppress 3, ECF No. 75-2).)  In its supplemental opposition,

the State again maintained that " '[t]here was no Fourth Amendment violation during the

traffic stop on February 26, 2015,' as the court had already 'made a factual finding that

there was probable cause for the traffic stop.' "  (Mot., Fact ¶ 17, ECF No. 75 (quoting

Ex. L to Mot., 2/25/16 Suppl. Opp'n to 2/3/16 Mot. to Suppress 2, ECF No. 75-2).)

Further, the State argued that "[e]ven if the traffic stop were unlawful, [Mr. Parkinson]

committed intervening illegal acts—running over the officers and fleeing the scene of

the traffic stop," which allowed the officers to "constitutionally arrest him for that crime."

(Ex. L to Mot., Suppl. Opp'n to 2/3/16 Mot. to Suppress 4–5, ECF No. 75-2.)  Thus, the

State concluded that "any Fourth Amendment violation that may have occurred cannot

be used as an excuse for [Mr. Parkinson] to suppress his conduct."  (Ex. L to Mot.,

Suppl. Opp'n to 2/3/16 Mot. to Suppress 5, ECF No. 75-2.)

On February 29, 2016, the state court held a hearing on the supplemental motion

to suppress.  (Mot., Fact ¶ 18, ECF No. 75; Ex. M to Mot., 2/29/16 Hr'g Tr., ECF No. 75-

2.)  At the hearing, the judge indicated that

> [Mr. Parkinson] alleges that the stop was illegal and that anything that came
> as a result of that stop should be suppressed, specifically the two second-
> degree felonies of assault against a police officer and the third-degree
> felony of failing to stop or respond at the command of police, should be
> dismissed because of illegal conduct.

(Ex. M to Mot., 2/29/16 Hr'g Tr. 8:3–9, ECF No. 75-2;Mot., Fact ¶ 18, ECF No.

75.)

As to the legality of the traffic stop, the judge issued the following ruling:

> I went back and reviewed my notes and I reviewed some of the transcript
> of the hearing that was held last September, and at the time of the hearing
> -- at the time of the hearing or shortly thereafter, I made findings that the
> traffic stop was legal, that there was a basis for the traffic stop because of -
> - I found credible the testimony of Officer Sanderson that the defendant had
> committed a traffic violation of failure to signal, and specifically the

13

testimony was found on pages 3 and 4.  The prosecutor said, on page 3 of the transcript of Officer Sanderson's testimony -- he said –

[Q]uestion:  "Let's start at the beginning.  February 26, what drew your attention to the defendant?  Where were you?"

"Witness:  I was driving on State Street southbound in the area of about 5600 South.

"Question:  What happened?

"Answer:  I saw the defendant's vehicle perform a traffic violation.

"Question:  And do you remember what the violation was?

"Answer:  It was failure to signal properly before a lane change.

"Question:  Were you alone in your vehicle?

"Answer:  I was.

"Question:  Okay.  What did you do after observing this traffic violation?

"Answer:  I got behind the defendant's vehicle.  I believe it was 5770 South and State Street.  As he turned left, I turned my emergency equipment, lights, sirens, and conducted a traffic stop."

And then it goes on.  And that was how the stop was initiated.  And I found that testimony credible back then, and I conclude today that it was credible testimony.  And based on that, I find it was appropriate for -- the officer had appropriate cause to stop the vehicle.

(Mot., Fact ¶ 18, ECF No. 75 (quoting Ex. M to Mot., 2/29/16 Hr'g Tr. 8:10–9:23, ECF No. 75-2).)  The court also addressed the issue "discussed at the last hearing, and the issue is whether -- even if a traffic stop was illegal, would that be a basis for dismissing the defendant's charges?"  (Ex. M to Mot., 2/29/16 Hr'g Tr. 9:24–10:4, ECF No. 75-2.)  After describing the facts in three Utah Court of Appeals cases bearing on this issue, the judge found as follows:

So these cases state that in this case the authorities apply directly to this case.  They're directly on point.  Even if the initial stop was illegal, the

14

evidence presented by the officers was that while -- during the stop, they directed Mr. -- the officers directed Mr. Parkinson to turn off the vehicle and get out of the vehicle, and he refused both directions of the officers.  When the officers attempt to turn off the car themselves and pull Mr. Parkinson out of the vehicle -- I know Mr. Parkinson denies this, but the officers' testimony was credible that he put the vehicle in gear and gunned the vehicle, and that caused the officers to be dragged 50 feet under the vehicle and seriously injured.

That intervening conduct of Mr. Parkinson not stopping when he was commanded to stop, turn off his car, and the intervening conduct of hitting the gas on the car, causing the car to go forward, is a new -- those are three new crimes, because two officers were injured badly by being drug under the car, and the defendant stated the defendant did not stop the vehicle. He pulled over the vehicle and stopped the vehicle, but he did not turn off the vehicle when the officers directed him to.

Under the principle of the cases of Griego, Earl, and Lorenzo, that's evidence of new -- a new distinct -- three new distinct crimes, and even if the stop had been illegal, the evidence of those crimes would not be suppressed under the principle that I've just taken a few minutes to describe; therefore, I am denying the motion to suppress evidence that the defendant committed two second-degree felonies of assault against a police officer and a third-degree felony of failing to stop or respond to command of police.

(Ex. M to Mot., 2/29/16 Hr'g Tr. 15:1–16:11, ECF No. 75-2.)

Mr. Parkinson's case then proceeded to trial, and on March 23, 2016, the jury convicted Mr. Parkinson on two counts of assault against a police officer and one count of failing to stop or respond to a police command.  (Mot., Fact ¶ 19, ECF No. 75; Ex. N to Mot., 3/23/16 Minute Entry 1–2, ECF No. 75-2.)  Mr. Parkinson appealed his convictions on grounds unrelated to whether the officers had reasonable suspicion to initiate a traffic stop.  (Mot., Fact ¶ 20, ECF No. 75; see also State v. Parkinson, 2018 UT App 62, 427 P.3d 246.)  The Utah Court of Appeals affirmed Mr. Parkinson's convictions, (Mot., Fact ¶ 20, ECF No. 75; Parkinson, 2018 UT App 62, ¶ 1), and the Utah Supreme Court denied Mr.

Parkinson's petition for certiorari.  (Mot., Fact ¶ 20, ECF No. 75; State v. Parkinson, 429 P.3d 462 (Utah 2018) (table decision).)

## DISCUSSION

Officer Sanderson argues that issue preclusion bars Mr. Parkinson from relitigating in this case whether Officer Sanderson had reasonable suspicion to initiate the February 26, 2015 traffic stop.  (See Mot. 2, ECF No. 75.)  He asserts that the judge in Mr. Parkinson's state court case resolved this issue, concluding that probable cause existed for the traffic stop, and that the Court must give this determination preclusive effect.  (Id. at 16–19.)  Citing the elements for issue preclusion under Utah law set forth in Oman v. Davis School District, 2008 UT 70, 194 P.3d 956, Officer Sanderson argues that each of the elements is met, including that (1) Mr. Parkinson was a party in his state court case, (2) Mr. Parkinson's state court case decided the issue of whether Officer Sanderson had reasonable suspicion to initiate the February 26, 2015 traffic stop, (3) Mr. Parkinson completely, fully, and fairly litigated the issue of whether Officer Sanderson had reasonable suspicion to initiate the traffic stop in the state court case, and (4) the state court's ruling on this issue constituted a final judgment on the merits for issue preclusion purposes.  (Mot. at 13–14, 16–18, ECF No. 75.)  Officer Sanderson also argues that failing to give the state court's finding concerning the legality of the traffic stop preclusive effect would betray the principles supporting the issue preclusion doctrine.  (Reply Mem. Supporting Defs.' Mot. for Summ. J. ("Reply") 13–14, ECF No. 81.)

Mr. Parkinson does not dispute Officer Sanderson's recitation of the elements required for issue preclusion to apply under Utah law but argues that his criminal case

does not satisfy certain of the requirements and that issue preclusion therefore does not bar his remaining Fourth Amendment claim against Officer Sanderson in this case. (Opp'n 3, ECF No. 77.)  Specifically, Mr. Parkinson asserts that the state court's probable cause determination was not "essential" or "necessary" to Mr. Parkinson's state court convictions or final judgments that disposed of the charges against Mr. Parkinson.  (Id. at 3–10.)  At the June 5, 2019 hearing on Officer Sanderson's Motion, Mr. Parkinson clarified that he does not maintain that essentiality is a separate element of issue preclusion under Utah law.  Instead, Mr. Parkinson contends that essentiality or necessity constitute an aspect of one or more of the required elements Officer Sanderson must satisfy for issue preclusion to apply.  Mr. Parkinson also argued at the hearing that the fact the state court identified alternative findings in denying Mr. Parkinson's second motion to suppress negates the preclusive effect of either finding.

The undersigned finds each of the elements required to apply issue preclusion in this case satisfied.  As noted above, the parties agree that Mr. Parkinson was a party in his Utah state court criminal case and that the issue previously decided—whether Officer Sanderson had reasonable suspicion to initiate the February 26, 2015 traffic stop—is identical to the remaining issue in this case, thus satisfying the first and second elements of the issue preclusion test.  As addressed below, the undersigned finds that the remaining elements of the issue preclusion test are satisfied, as well.  Further, applying issue preclusion to bar Mr. Parkinson from relitigating the legality of his February 26, 2015 traffic stop would serve the purposes of the issue preclusion doctrine.

17

## A.  Mr. Parkinson Completely, Fully, and Fairly Litigated the Legality of the Traffic Stop in his State Court Case

Officer Sanderson claims the parties in the state court case "completely, fully, and fairly" litigated the legality of the traffic stop, satisfying the third element of the issue preclusion test.  (Mot. 17, ECF No. 75.)  Specifically, Officer Sanderson argues that Mr. Parkinson filed two "motions to suppress based on the illegality of the traffic stop both pro se and through counsel," the state court held an evidentiary suppression hearing on the issue during which all three Officers testified, the state court found probable cause for the stop existed, and Mr. Parkinson had the opportunity to and did appeal his state court criminal conviction.  (Id.)  Mr. Parkinson does not dispute that the validity of the traffic stop was "litigated in [his] criminal case," (see Opp'n 1, ECF No. 77), although as addressed below, he contends the issue was not essential or necessary to the resolution of the suit.  (Id. at 4.)

The fully and fairly litigated element of Utah's issue preclusion test "stem[s] 'from fundamental due process and requires that litigants have their day in court.' "  3D Const. & Dev., L.L.C. v. Old Standard Life Ins. Co., 2005 UT App 307, ¶ 20, 117 P.3d 1082 (quoting Copper State Thrift & Loan v. Bruno, 735 P.2d 387, 391 (Utah. Ct. App. 1987)).  This element "does not require either a motion or a hearing for full and fair litigation" but only that " 'the parties [] receive notice, reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections.' "  Career Serv. Review Bd. v. Utah Dep't of Corr., 942 P.2d 933, 939 (Utah 1997) (quoting Copper State Thrift & Loan, 735 P.2d at 391); see also 3D Const. & Dev., 2005 UT App 307, ¶ 19 (finding the fully and fairly

litigated element "met if the party against whom issue preclusion is sought had adequate notice and an opportunity to litigate the issue").

Mr. Parkinson had a full and fair opportunity to litigate the legality of the traffic stop in his state court case. Mr. Parkinson filed two motions to suppress in that case arguing that the court should suppress all evidence obtained after the traffic stop because the stop was unlawful. Mr. Parkinson filed his first motion to suppress pro se, with approval of his counsel. Subsequently, the state court held an evidentiary hearing during which all three Officers testified under oath. Mr. Parkinson's counsel cross-examined all the Officers. Both Officers Sanderson and Pearson testified as to the circumstances that led to Mr. Parkinson's traffic stop. Mr. Parkinson elected not to testify at the suppression hearing but nevertheless filed a response to the Officers' testimony after the hearing and argued his position to the state court judge at a later hearing on his motion.

After receiving the briefing on this issue, hearing the Officers' testimony, and hearing the parties' arguments during the subsequent hearing on the motion, the state court judge concluded that the Officers had probable cause to conduct the traffic stop. In Utah, determinations as to whether reasonable suspicion or probable cause exist present questions of law for the court. See State v. Simons, 2013 UT 3, ¶ 12, 296 P.3d 721 (stating that the determination as to whether reasonable suspicion exists constitutes a question of law even though it depends significantly on the facts); State v. Moreno, 2009 UT 15, ¶ 7, 203 P.3d 1000 (stating that a determination concerning probable cause remains a question of law); State v. Nguyen, 878 P.2d 1183, 1185–86 (Utah Ct. App. 1994) (indicating that reasonable suspicion and probable cause pose

determinations of law).  After the state court judge denied Mr. Parkinson's motion to suppress and other motions he filed, Mr. Parkinson indicated on the record that he intended to seek an interlocutory appeal of the judge's orders.  Ultimately, he elected not to do so even after the judge indicated he had the right to do so.

After this hearing, Mr. Parkinson filed a motion seeking the judge's recusal, and in the order denying that motion, the Associate Presiding Judge remarked that the trial judge "spent nearly the entire day hearing [Mr. Parkinson's] four motions, which is unusual in the context of a busy criminal docket," and observed that "[b]y all appearances, [the judge] took [Mr. Parkinson's] motions very seriously, and gave [Mr. Parkinson] a full opportunity to argue his positions and be heard on the matters pending before the Court."  (Ex. F to Mot., 10/27/15 Minute Entry 3, ECF No. 75-2.)

Later Mr. Parkinson filed, through counsel, yet another motion to suppress challenging the legality of the traffic stop and arguing that the court should suppress all evidence obtained after the traffic stop.  The judge heard arguments on the second motion to suppress and reiterated his finding that probable cause existed for the traffic stop and also found that even if the stop had been illegal, Mr. Parkinson could not use the Fourth Amendment to suppress evidence of his intervening criminal conduct that occurred after the stop.  Mr. Parkinson's case eventually proceeded to trial where the jury convicted him of two counts of assaulting a police officer and one count of failing to stop at a police command.  Mr. Parkinson appealed his conviction; he did not challenge the state court's rulings on the motions to suppress as part of his appeal even though he could have done so.

While Mr. Parkinson filed his first motion to suppress pro se and argued the motion at the hearing, he clearly set forth his arguments and position in the motion and at the hearing.  Nothing from his motion or the hearing indicates that Mr. Parkinson could not cogently argue his position or that the judge did not afford him an adequate opportunity to present his position.  That Mr. Parkinson filed and argued this motion pro se does not, standing alone, negate the effects of issue preclusion.  See In re Tsamasfyros, 940 F.2d 605, 607 (10th Cir. 1991) (stating that the fact a party "appeared pro se in a prior state court proceeding does not lessen the collateral effect of the state court judgment"); see also DeGuelle v. Camilli, 724 F.3d 933, 938 (7th Cir. 2013) (stating that "litigating pro se" does not "insulate a litigant from application" of issue preclusion unless, for example, the judge denied the pro se litigant an adequate hearing); Watkins v. Martin, No. 13 C 9239, 2016 WL 4579122, at *4 (N.D. Ill. Aug. 29, 2016) (unpublished) ("Plaintiff[']s status as a pro se litigant in state court does not insulate him from the doctrine of collateral estoppel."), aff'd, 691 F. App'x 266 (7th Cir. 2017) (unpublished).  Furthermore, Mr. Parkinson's counsel cross-examined the Officers during the suppression hearing.  While Mr. Parkinson had the opportunity to testify at the suppression hearing and chose not to do so, he did state his position on the facts of what happened during his argument and in his affidavits.  In addition, another state court judge examined the proceedings with respect to Mr. Parkinson's motion to suppress, and other motions that he filed, and commented favorably on the time the judge took to hear the motions and the opportunity he afforded Mr. Parkinson to argue his positions fully.  Moreover, the state court judge considered a second motion

to suppress brought by counsel, again giving Mr. Parkinson an opportunity to argue his position in both briefing and at a hearing.

Finally, Mr. Parkinson had the opportunity to appeal the judge's decisions on his motions to suppress. He could have sought interlocutory appeals of those decisions, as he initially indicated he wanted to do with respect to the first motion to suppress. See Utah R. App. P. 5(a) ("An appeal from an interlocutory order may be sought by any party by filing a petition for permission to appeal from the interlocutory order with the clerk of the appellate court with jurisdiction over the case within 20 days after the entry of the order of the trial court . . ."); Utah Code § 78A-4-103(2)(d) (indicating that the Utah Court of Appeals has appellate jurisdiction over "interlocutory appeals from any court of record in criminal cases, except those involving a charge of a first degree or capital felony"); State v. Dennis, 2007 UT App 266, ¶¶ 1, 7, 167 P.3d 528 (affirming denial of suppression motion on interlocutory appeal); State v. Burningham, 2000 UT App 229, ¶¶ 1, 6, 10 P.3d 355 (reversing denial of suppression motion on interlocutory appeal). Further, once convicted, Mr. Parkinson could have appealed the judge's rulings on the motions to suppress. The fact that Mr. Parkinson ultimately failed to appeal these rulings does not negate the preclusive effect of the state court's rulings.

Mr. Parkinson contends that an appeal of the probable cause determination would have been irrelevant given the correctness of the district court's finding on the second motion to suppress that Mr. Parkinson's behavior post-stop was not subject to suppression due to his intervening criminal conduct. (See Opp'n at 10, ECF No. 77.) The Tenth Circuit has expressed concern about applying issue preclusion to effectively unappealable pretrial decisions and the probable cause determination in particular. Bell

v. Dillard Dept. Stores, Inc., 85 F.3d 1451, 1456 (10th Cir. 1996).  However, in that same case, the Tenth Circuit noted that "the lack of properly memorialized orders, the recusal of the first judge, and the lack of evidence that the second judge reviewed the relevant transcript before ruling on [the criminal defendant/current plaintiff's] pretrial motion to quash make it impossible to determine that a 'full and fair opportunity to litigate' was available."  Id. at 1457-58.  Furthermore, the Tenth Circuit, applying Utah law in Cook, found the fully and fairly litigated element met where "the constitutional issues in [the plaintiff's] criminal proceedings were litigated in an evidentiary hearing at which he was represented by counsel, and had the right and opportunity to testify, present evidence, call and cross-examine witnesses, and appeal the court's ruling."  547 F. App'x at 860.

In this case, we have the benefit of complete transcripts, two rulings on the same issue, and review by the associate presiding judge.  Thus the proceedings in Mr. Parkinson's state court case make clear that Mr. Parkinson had the opportunity to fully and fairly litigate the legality of the traffic stop in his state court case.  Mr. Parkinson had his day in court with respect to the legality of the traffic stop and the undersigned has "no reason to doubt the quality, extensiveness, or fairness of the criminal proceeding."  See id.  Accordingly, the undersigned finds the third element of Utah's issue preclusion test satisfied.

### B. The State Court's Finding that Probable Cause Existed for the Traffic Stop Constitutes a Final Judgment on the Merits for Issue Preclusion Purposes

Officer Sanderson argues that the state court's determination that probable cause existed for the traffic stop constitutes a final judgment on the merits and therefore satisfies the final element of the issue preclusion test.  (Mot. 18, ECF No. 75.)  Mr.

Parkinson disputes the satisfaction of this element, arguing that the state court's orders on the motions to suppress do not constitute "final judgments" that disposed any part of Mr. Parkinson's case.  (Opp'n at 4–5, ECF No. 77.)  Citing to several non-Utah cases, Mr. Parkinson argues that because suppression orders do not dispose of a case, rulings on such motions do not qualify as "final judgments" for issue preclusion purposes.  (Id. at 5-6 n.21.)

Utah case law more specifically describes the final element of the issue preclusion test as requiring that " 'the issue must have been decided in a final judgment on the merits in the previous action.' "  2DP Blanding, LLC v. Palmer, 2017 UT 62, ¶ 35 n.9, 423 P.3d 1247 (quoting Macris & Assocs., Inc. v. Neways, Inc., 2000 UT 93, ¶ 37, 16 P.3d 1214).  "A 'final judgment' for purposes of issue preclusion 'includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.' "  Heywood v. Dep't of Commerce, 2017 UT App 234, ¶ 28, 414 P.3d 517 (quoting Restatement (Second) of Judgments § 13 (1982)); see also Macris & Assocs., 2000 UT 93, ¶ 40 ("[I]f an issue is actually raised by proper pleadings and treated as an issue in a case, it is conclusively determined by the first judgment.").  "The prior adjudication of the issue is considered sufficiently firm if '[ (1) ] it was not tentative, [ (2) ] the parties had an opportunity to be heard, and [ (3) ] there was an opportunity for review.' "  Heywood, 2017 UT App 234, ¶ 28 (alteration in original) (quoting Carpenter v. Young, 773 P.2d 561, 568 (Colo. 1989)).

Additionally, "under Utah law, 'a judgment does not have to proceed to trial' to be 'on the merits' for issue preclusion."  Cook, 547 F. App'x at 860 (quoting State v. Sommerville, 2013 UT App 40, ¶ 32, 297 P.3d 665, 674).  Instead, a judgment on the

merits " 'may be made at any stage of the litigation. . . .' "  Id.  " 'A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based on facts and evidence . . . .' "  Id.

Because Utah does not require that a "final judgment" dispose of a case or any part of a case for issue preclusion to apply—and includes any sufficiently firm prior adjudication of an issue—Mr. Parkinson's claim that the state court's finding concerning the legality of the traffic stop does not constitute a "final judgment" lacks merit. Similarly, his argument that rulings on motions to suppress do not constitute "final judgments" for issue preclusion purposes also fails.  Mr. Parkinson fails to cite any Utah cases for this proposition, and contrary to his assertion, courts applying Utah law have given rulings on motions to suppress preclusive effect.  See, e.g., Cook, 547 F. App'x at 858–60 (affirming district court's decision that issue preclusion prevented the § 1983 plaintiff from relitigating in federal court a Utah court's probable cause determination made in connection with a motion to dismiss/suppress).

Here, the state court's determination that the Officers had probable cause to initiate the traffic stop constitutes a final judgment on the merits for issue preclusion purposes.  First, the state court made a sufficiently firm probable cause determination warranting preclusive effect.  The court—after briefing, an evidentiary suppression hearing, and oral argument—did not make a tentative or unconsidered determination. The judge made a specific finding that probable cause existed.  (Ex. E to Mot., 9/30/15 Hr'g Tr. 28:23–29:14, ECF No. 75-2.)  Further, as addressed in detail above, the state court heard Mr. Parkinson on the legality of the traffic stop, and Mr. Parkinson could have appealed the judge's rulings on his motions to suppress.

25

Second, the state court's probable cause determination constitutes a final adjudication "on the merits."  A court can make a judgment on the merits at any stage of a case.  See Sommerville, 2013 UT App 40, ¶ 32.  In Mr. Parkinson's case, the state court issued a substantive ruling on the legality of the traffic stop based on the relevant law and the facts before it.  Thus the state court's determination that the Officers had probable cause to conduct the traffic stop reflects a final adjudication on the merits for purposes of issue preclusion.  See Cook, 547 F. App'x at 860 ("The state court ruling [on the motion to suppress in a case later dismissed] was a final adjudication on the merits for purposes of issue preclusion because it rendered a substantive ruling on the merits of the constitutional issues presented, based on the relevant law applied to the facts of the claims.")  Therefore, the undersigned finds the final element of the issue preclusion test satisfied in this case.

## C. The Legality of the Traffic Stop Constituted an Essential Determination in the Criminal Case

Mr. Parkinson argues that issue preclusion does not apply in this case because the state court's determination regarding probable cause was not "essential" or "necessary" to his ultimate convictions for assaulting a police officer and failing to stop at a police command.  (Opp'n 4, 8–12, ECF No. 77.)  Mr. Parkinson conceded during the hearing on Officer Sanderson's Motion that essentiality does not constitute a separate element of the issue preclusion test under Utah law but maintains that the prior ruling must satisfy this requirement for issue preclusion to apply.  While not set forth in his Opposition, Mr. Parkinson also argued at the hearing that because the state court's order on the second motion to suppress contained alternative findings—that the traffic stop was legal because probable cause existed, but that even if illegal, Mr. Parkinson

could not use the Fourth Amendment to suppress evidence of his intervening criminal conduct occurring after the stop—neither finding has preclusive effect.  Officer Sanderson counters that essentiality does not form a specific requirement under Utah law and that in any event, the state court's determination regarding probable cause was essential to the state court's suppression rulings.  (Reply 4–10, ECF No. 81.)

The undersigned agrees that Utah law does not include a separate essentiality element or test.  However, various Utah cases reference the principle, as do treatises and cases from other jurisdictions.  See, e.g., Robertson v. Campbell, 674 P.2d 1226, 1230 (Utah 1983) ("What is critical is whether the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in a second suit."); Zufelt v. Haste, Inc., 2006 UT App 326, ¶ 10, 142 P.3d 594 (quoting language from Robertson); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 18 Fed. Prac. & Proc. Juris. § 4421 (3d ed. 2019) ("Issue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action.").  Therefore the undersigned considers whether the prior ruling satisfies this principle.

The essentiality principle looks at whether the prior court determination from which a party attempts to assert issue preclusion resulted from full litigation by the parties and careful consideration by that court or instead, reflects merely an incidental or collateral finding during the proceedings.  See Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 18 Fed. Prac. & Proc. Juris. § 4421 (3d ed. 2019).  If the prior court considered the issue only incidentally or collaterally, then issue preclusion should not apply.  See id. ("If the inquiry reveals that the matters had 'come under consideration

only collaterally or incidentally,' preclusion is denied." (quoting Norton v. Larney, 266 U.S. 511, 517 (1925)).  Fairness dictates the essentiality principle, ensuring that only issues litigated by the parties and carefully considered by the court have preclusive effect.  Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 250 (3d Cir. 2006) ("The requirement that a preclusive finding must have been necessary to a judgment is rooted in principles of fairness.  '[P]arties should be estopped only on issues they actually deem important, and not on incidental matters.' " (alteration in original) (quoting Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177, 1183 (3d Cir. 1972); Commercial Assocs. v. Tilcon Gammino, Inc., 998 F.2d 1092, 1097 (1st Cir. 1993) ("The reasons for this condition are that a collateral issue, although it may be the subject of a finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to litigate the issue fully since it is not determinative. [] Under these circumstances, extending the force of the unnecessary finding into a different case is deemed too risky and possibly unfair." (emphasis in original) (internal citation omitted)).

The state court's determination that the Officers had probable cause to initiate the traffic stop resulted from full litigation by the parties and careful consideration by the state court.  The state court judge held a full evidentiary suppression hearing, where the Officers testified and held another hearing to allow argument on the motion before concluding that probable cause existed for the traffic stop.  When looking at the record in Mr. Parkinson's state court case, Mr. Parkinson clearly considered the legality of the traffic stop an important issue in his case and treated it as such, as did the state court judge.  Moreover, despite Mr. Parkinson's assertion that the state court's probable

cause finding had no relationship to his convictions, the state court's determination on Mr. Parkinson's first motion to suppress represented a significant finding in Mr. Parkinson's state court case at that time. Had the judge instead found the traffic stop unlawful and accordingly suppressed any evidence obtained after the stop—including the evidence relating to Mr. Parkinson's interactions with the Officers that led to the assault and failure to stop charges—Mr. Parkinson's case may not have gone to trial. Accordingly, the undersigned finds that the state court's probable cause determination satisfies the essentiality principle.

Mr. Parkinson also raised another aspect of essentiality during the hearing on Officer Sanderson's Motion. Citing Restatement (Second) of Judgments § 27 (1982), illustration 14, Mr. Parkinson argued that because the state court judge's determination on the second motion to suppress contained alternative findings, neither finding— including the finding that that the Officers had probable cause to initiate the traffic stop—receives preclusive effect. The Second Restatement provides that if a court's judgment "is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27 cmt. i (1982). This principle results from concerns that "a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result" and that the losing party "might be dissuaded" from appealing both determinations "because of the likelihood that at least one of them would be upheld and the other not even reached." Id.

Utah has not explicitly adopted this principle from the Second Restatement despite citing the Second Restatement frequently.  Moreover, many jurisdictions have refused to adopt the Second Restatement's position on this issue, criticized it, and acknowledged that it contradicts the First Restatement.  See Propst v. N. Carolina Dep't of Health & Human Servs., 234 N.C. App. 165, 169, 758 S.E.2d 892, 895–96 (2014) ("We decline to follow the approach of the Second Restatement as to [alternative determinations] because it is incompatible with the doctrine of collateral estoppel as it has been applied in this state."); In re Semadeni, 489 B.R. 576, 585 (Bankr. D. Colo. 2013) (stating that "[t]he Second Restatement position has been the subject of criticism by many courts" and predicting that the Colorado Supreme Court would not adopt it); Herrera v. Wyoming, 587 U.S. ___, 139 S. Ct. 1686, 1710–11 (2019) (Alito, J., dissenting) ("There is scant explanation for this change in position [between the First and Second Restatement] beyond a reference in the Reporter's Note to a single decision of the United States Court of Appeals for the Second Circuit.  . . . The First Restatement has the more compelling position."); Restatement (First) of Judgments § 68 cmt. n (1942) ("Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment.").

Without addressing the conflict between the First and Second Restatements or the apparent circuit split on the issue, the Tenth Circuit appears to have adopted the view of the Second Restatement.  See Turney v. O'Toole, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990).  However, many other circuits have not.  See Jean Alexander Cosmetics, 458 F.3d at 251 (stating that "[t]here is no consensus among the courts of

appeals as to whether the First or Second Restatement offers the better approach" and collecting cases).  In this case, Utah law, not federal law governs the preclusion issue. Valley View, 497 F.3d at 1100.

However, even if Utah adopted the principle set forth in the Second Restatement it would not apply here because the state court's determination on the first motion to suppress did not constitute an alternative finding.  After holding an evidentiary suppression hearing and hearing argument on Mr. Parkinson's first motion to suppress, the state court found that the Officers had probable cause to initiate the traffic stop.  The state court did not make any alternative findings in reaching this determination, which, standing alone, has preclusive effect.  The fact that Mr. Parkinson tried to take a second bite at the apple by filing a second motion to suppress in his state case, and the state court ultimately made alternative findings in connection with that motion, does not negate the preclusive effect of the state court's original determination that probable cause existed.  Indeed, the initial determination reflects the full attention of the court and the parties prior to consideration of the eventual alternative ruling.  At the initial determination, a contrary decision could have ended the case, thus suggesting all involved took the issue seriously rather than treating it as an incidental matter.

### D.  The Application of Issue Preclusion in This Case Serves the Underlying Purposes of the Doctrine

Officer Sanderson also argues that relitigating the legality of the traffic stop in this case would "betray" the principles of issues preclusion.  (Reply 13–14, ECF No. 81.) Specifically, Officer Sanderson argues that allowing Mr. Parkinson to proceed in this case would allow Mr. Parkinson a second chance to prevail on an issue that a Utah

state court already determined, which is what the doctrine of issue preclusion "is meant

to avoid."  (Id. at 14.)

The Utah Supreme has held that

[t]he purposes of issue preclusion include "(1) preserving the integrity of the
judicial system by preventing inconsistent judicial outcomes; (2) promoting
judicial economy by preventing previously litigated issues from being
relitigated; and (3) protecting litigants from harassment by vexatious
litigation."

Oman, 2008 UT 70, ¶ 28 (quoting Buckner, 2004 UT 78, ¶ 14,).  In Allen, the United

States Supreme Court articulated similar reasons for according preclusive effect to

issues decided by state courts, including that it "reduce[s] unnecessary litigation",

"foster[s] reliance on adjudication," and " promote[s] the comity between state and

federal courts that has been recognized as a bulwark of the federal system."  449 U.S.

at 95–96.

The undersigned finds that according preclusive effect to the state court's

probable cause determination in Mr. Parkinson's state court case serves the underlying

purposes of issue preclusion.  First, applying issue preclusion in this case will preserve

the integrity of the judicial system by preventing an outcome in this § 1983 case

regarding the legality of the traffic stop that is inconsistent with the state court's

determination that the stop was lawful.  A finding in this case that Officer Sanderson did

not have reasonable suspicion to conduct the traffic stop—which Mr. Parkinson would

need to prevail in his lone remaining claim in this case—would result in inconsistent

rulings on the same issue and harm the comity between state and federal courts that

issue preclusion aims in part to protect.  Second, applying issue preclusion here will

promote judicial economy by preventing an issue already decided in Mr. Parkinson's state court case—the legality of the traffic stop—from being relitigated in this case.

Mr. Parkinson has had his day in court with respect to the legality of the traffic stop and may not relitigate that issue again in this case. See Buckner, 2004 UT 78, ¶ 12 ("[O]nce a party has had his or her day in court and lost, he or she does not get a second chance to prevail on the same issues.").

## **RECOMMENDATION**

Mr. Parkinson's sole remaining claim against Officer Sanderson hinges on a determination that Officer Sanderson lacked reasonable suspicion to conduct the February 26, 2015 traffic stop. See Cortez-Galaviz, 495 F.3d at 1205–06 (stating Fourth Amendment test to determine reasonableness of traffic stops). However, the state court in Mr. Parkinson's case already determined that the Officers had probable cause—a more demanding standard than reasonable suspicion—to initiate the traffic stop. As set forth above, the state court's findings concerning the legality of the traffic stop satisfy all the elements required to apply issue preclusion under Utah law. Further, applying issue preclusion here will serve the underlying purposes of the doctrine. Accordingly, the District Court should give preclusive effect to the state court's determination that the probable cause existed for the traffic stop. That finding defeats Mr. Parkinson's remaining claim against Officer Sanderson in this case. For these reasons, the undersigned RECOMMENDS the District Judge GRANT Officer Sanderson's Motion for Summary Judgment.

The Court will send copies of this Report and Recommendation to the parties and hereby notifies them of their right to object to the same. The Court further notifies

the parties that they must file any objection to this Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 31st day of July, 2019.


BY THE COURT:


EVELYN J. FURSE
United States Magistrate Judge